**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DEREK MORTLAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 21-1351 |
| v. | ) | Judge Nora Barry Fischer |
| | ) | |
| | ) | |
| CASTLE HOSPITALITY, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

Plaintiff Derek Mortland asks the Court to enter a default judgment against Defendant Castle Hospitality, LLC. (Docket Nos. 21; 22). After careful consideration and for the following reasons, the Court grants Mortland's motion and will enter a default judgment against Castle Hospitality, LLC.

**II. BACKGROUND**

According to his complaint, Mortland requires the use of a wheelchair to travel about in public. (Docket No. 1 at ¶ 5). Between October 15, 2020 and October 16, 2020, he stayed at a Hampton Inn & Suites located in New Castle, Pennsylvania. (Docket Nos.  ¶¶ 6, 13). He alleges that Castle Hospitality is the entity that "owns, leases (or leases to), or operates" the hotel. (Docket No. 1 ¶ 10). When Mortland stayed at the hotel, he "personally encountered architectural barriers which denied him the full and equal access to the property" due to his disability. (Docket No. 1 at ¶¶ 14-15). Mortland provides 60 instances in which the hotel, constructed after January 26, 1992 (Docket No. 1 at ¶ 32), violates the 1991 and/or 2010 Standards for Accessible Design promulgated under Title III of the Americans with Disabilities Act. *See* 28 C.F.R. pt. 36, app. D ("1991

Standards"); 36 C.F.R. pt. 1191, apps. B & D ("2010 Standards"); *see also* 42 U.S.C. § 12186(b) (mandating that the Attorney General issue regulations "to carry out the provisions" of Title III); *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1217-18 (10th Cir. 2014) (explaining regulatory authority and history of the 1991 and 2010 Standards). According to Mortland, because of the violations of the 1991 and 2010 Standards, he is "unable to use" the facilities at the hotel on a "full and equal basis." (Docket No. 1 at ¶ 22). He also states that the denial of access caused an un-described physical injury as well as embarrassment and humiliation. (Docket No. 1 at ¶ 2). Mortland, who resides in Columbus, Ohio, alleges that he intends to return to the hotel to obtain lodging because the hotel is close to the Pittsburgh International Race Complex where he races and instructs multiple times per year. (Docket Nos. 1 at ¶ 25; 22-1 at 1). He expects to visit the hotel on an annual basis, beginning at some point in 2022, to determine if Castle Hospitality has removed the barriers to access which he encountered during his stay. (Docket No. 1 at ¶ 25). According to Mortland, he "would like to return but for [Castle Hospitality]'s non-compliance." (Docket No. 22-1 at 2).

Mortland sued Castle Hospitality on October 11, 2021. (Docket No. 1). On January 3, 2022, he brought a motion for default judgment given Castle Hospitality's failure to plead or otherwise respond to the complaint. (Docket No. 15). The Court denied the motion, without prejudice, so that Mortland could effectuate service on Castle Hospitality in accordance with Federal Rule of Civil Procedure 4. (Docket No. 17). On January 12, 2022, a process server working on behalf of Mortland personally served Harsh Patel at the hotel lobby. (Docket No. 18). Harsh Patel is the general manager of the hotel, and he confirmed that "Ramesh B. Patel is his direct boss and the owner." (Docket No. 18 at 1). He also confirmed that he was authorized to receive process. (Docket No. 18 at 1). Subsequently, Mortland requested that the Clerk of the United States District Court

of the Western District of Pennsylvania enter default against Castle Hospitality on February 21, 2022 after it failed to plead or otherwise respond to the complaint. (Docket No. 19). The Clerk issued an entry of default on February 24, 2022. (Docket No. 20). On June 20, 2022, Mortland filed a motion for default judgment as well as a brief, supporting documentation, and a proposed order. (Docket Nos. 21-22). The Court ordered Mortland to serve the request for default, the Clerk's entry of default, the motion for default judgment, the brief in support, and proposed order by July 5, 2022. (Docket No. 24). The Court also ordered Castle Hospitality to respond by July 12, 2022. (Docket No. 24). Mortland served the materials on June 29, 2022, this time on Ramesh B. Patel in the hotel lobby. (Docket No. 25). Castle Hospitality did not respond to the motion for default judgment. (Docket No. 25). Finally, on July 29, 2022, Mortland filed a "reply" brief to the motion for default judgment, although, as noted, Castle Hospitality had not responded. (Docket No. 26). With briefing and service complete, the Court considers Mortland's motion ripe for disposition.

### III. DISCUSSION

Federal Rule of Civil Procedure 55(a) provides, "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). If a plaintiff seeks relief other than a "sum certain" in damages, the plaintiff "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b). "[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984); *see also Thornton v. West*, 529 F. App'x 107, 110 (3d Cir. June 17, 2013).

Upon the Clerk's entry of default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d

1142, 1149 (3d Cir. 1990); *Murphy v. Ability Recovery Servs., LLC*, 2019 WL 7708592, at *1 (W.D. Pa. Aug. 7, 2019). That said, "the Court need not accept the moving party's legal conclusions[.]" *Bower v. NRA Grp., LLC*, 2019 WL 3306515, at *2 (W.D. Pa. July 22, 2019) (internal quotation marks and citation omitted). Therefore, "the Court must decide whether the unchallenged facts constitute a legitimate cause of action," before entering a default judgment against the defendant. *Murphy*, 2019 WL 7708592, at *1 (internal quotation marks and citation omitted). Once the Court determines that the plaintiff has plausibly alleged a valid cause of action, the Court must consider three factors when deciding whether to grant default judgment: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

Under Federal Rule of Civil Procedure 55, the Court "may conduct hearings" when it needs to "determine the amount of damages" to enter or effectuate a default judgment. Fed. R. Civ. P. 55(b)(2)(B). "Rule 55(b)(2)'s language regarding hearings is permissive." *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 271 (E.D. Pa. 2014). As numerous courts have held, if the Court can determine the amount of damages to be awarded based on affidavits or other evidentiary materials, "[t]he Court is under no requirement to conduct an evidentiary hearing with testimony." *E. Elec. Corp. of N.J. v. Shoemaker Constr. Co.*, 657 F. Supp. 2d 545, 552 (E.D. Pa. 2009); *see Rainey v. Diamond State Port Corp.*, 354 Fed. App'x. 722, 724 (3d Cir. 2009) ("If it is necessary to determine the amount of damages or to establish the truth of any averment by evidence, the court *may* conduct a hearing.") (emphasis added and internal quotation marks and citation omitted). The Court, in its discretion, does not believe that a hearing is warranted to resolve this matter.

**A. Standing**

Before proceeding further, the Court must decide whether Mortland has standing to bring his ADA claim. To establish Article III standing, a plaintiff bears the burden of establishing that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Mielo v. Steak 'n Shake Ops. Inc.*, 897 F.3d 467, 478 (3d Cir. 2018) (internal quotation marks and citation omitted). To establish an injury in fact, "a plaintiff must first show that he or she suffered an invasion of a legally protected interest. Second, a plaintiff must show that the injury is both concrete and particularized. Third, a plaintiff must also show that his or her injury is actual or imminent, not conjectural or hypothetical." *Id.* (internal quotation marks and citation omitted). As explained below, most of the elements of the standing analysis are easily satisfied here, but the Court will focus on the second prong of the injury-in-fact question: whether Mortland's injury is actual or imminent.

Regarding whether Mortland has suffered an invasion of a legally protected interest, the Court "must carefully separate [the] standing inquiry from any assessment of the merits of the plaintiff's claim" and ensure that the plaintiff has articulated a non-frivolous legal argument. *See id.* at 478-79 (internal quotation marks and citation omitted). Mortland sufficiently alleges that he suffered an "invasion" of a legally protected interest: the hotel, a public accommodation, has violated certain regulations of the ADA and Mortland is a person with a disability with rights under the ADA who stayed at the hotel. (Docket No. 1). Thus, Mortland presents a non-frivolous legal argument and has satisfied the first prong of the injury-in-fact question of the standing analysis. For the third prong of the injury-in-fact question, Mortland asserts that because of the hotel's violations of the 1991 and 2010 Standards that resulted in certain architectural barriers, he is

"unable to use" the facilities at the hotel on a "full and equal basis." (Docket No. 1 at ¶ 22). According to the Third Circuit, being unable to use a hotel facility because of the hotel's non-compliance with the ADA establishes a concrete injury. *See Mielo*, 897 F.3d at 480. (concluding that plaintiffs "sufficiently alleged a concrete harm in the form of experiencing actual physical difficulty in ambulating through parking facilities which are allegedly not ADA-compliant"). Thus, Mortland has satisfied the first and third prongs of the injury-in-fact question.

Traceability, the second step in the standing inquiry, "is akin to 'but for' causation in tort law and may be satisfied even where the conduct in question might not have been a proximate cause of the harm." *Id.* at 481 (citation omitted). Instead, "[a]n indirect causal relationship will suffice, provided that there is a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant." *Id.* Here, but for the hotel's ADA violations, Mortland was "unable to use" the facilities at the hotel on a "full and equal basis." (Docket No. 1 at ¶¶ 2, 22). Mortland's injury is therefore traceable to the hotel's ADA violations, and he has satisfied the second step in the standing inquiry. *See Mielo*, 897 F.3d at 481.

Lastly, Mortland must show that his injury "is likely to be redressed by a favorable judicial decision." *Id.* (citation omitted). The relief he seeks, an injunction requiring the hotel to make alterations to correct the ADA violations Mortland encountered, would enable Mortland to "use" the facilities on a "full and equal basis." (Docket No. 1 at ¶¶ 2, 22; pg. 17). As such, Mortland has established the third and final step of the standing inquiry. *See Mielo*, 897 F.3d at 481-82 (holding that an injunction requiring a public accommodation to bring the surface of a parking lot into compliance with the ADA so that a disabled person could ambulate in the parking lot satisfied the redressability question).

The real concern with standing in the Title III ADA context stems from the second element of the injury-in-fact prong: whether the injury is actual or imminent instead of speculative and hypothetical. Mortland is a "tester." (Docket No. 22-5). That is, he travels to various public accommodations and sues them for alleged Title III ADA violations that he encounters. *Harty v. Burlington Coat Factory of Pa., LLC*, 2011 WL 2415169, at *1 n.5 (E.D. Pa. June 16, 2011) ("Testers are qualified individuals with disabilities who visit places of public accommodation to determine their compliance with Title III."). A recurring issue for ADA testers is whether they have suffered an actual or imminent injury given that they can only seek injunctive relief under Title III of the ADA and their likelihood of returning to the public accommodation can sometimes appear uncertain. *See, e.g.*, *Anderson v. Macy's, Inc.*, 943 F. Supp. 2d 531, 541 n.12 (W.D. Pa. 2013) (Hornak, J.). While district courts have put forward various tests to examine tester standing, *Heinzl v. Cracker Barrel Old Country Store, Inc.*, 2015 WL 1925811, at *6 (W.D. Pa. Apr. 24, 2015) (Hornak, J.) (explaining the four-factor intent to return test and the deterrent effect test adopted by lower courts), it appears that the Third Circuit did not weigh in on ADA tester standing until 2018 in *Mielo v. Steak 'n Shake Operations. Inc.*, 897 F.3d 467, 478 (3d Cir. 2018).

In *Mielo*, the Third Circuit addressed an argument that two Title III ADA tester plaintiffs, who sought injunctive relief, lacked "evidence establishing any likelihood that Plaintiffs will return," to the public accommodations where they suffered their ADA injuries; thus, their injuries were not actual or imminent. *Id.* at 480 n.15. The Third Circuit rejected the argument as follows:

> Although Steak 'n Shake makes much of the unsurprising fact that Plaintiffs do not purport to know the exact date of their next visit to a Steak 'n Shake restaurant, this argument misses the point. Plaintiffs contend they are *currently* "deterred from returning to [Steak 'n Shake] facilities." JA 93 (Complaint). This allegation is supported by record evidence illustrating that Plaintiffs have visited many Steak 'n Shake restaurant locations in the past, and that Plaintiffs enjoy the food offered at those restaurants. *See, e.g.*, JA 737–40, 751–54. In this sense, the injury providing

Plaintiffs with standing to seek injunctive relief is not merely hypothetical or even imminent—it is *actual*, in that this allegedly unlawful deterrence is something that Plaintiffs are currently suffering. *Id.*

Following *Mielo*, the Court finds that Mortland has suffered an actual injury. To that end, Mortland explains that he will return to the hotel in 2022 "due to the hotel's proximity to the Pittsburgh International Race Complex where he races and instructs multiples times per year." (Docket No. 1 at ¶ 25). In an affidavit dated January 3, 2022 in support of his motion for default judgment, Mortland repeats his claim about the race complex and elaborates that he "would like to return but for Defendant's non-compliance." (Docket No. 22-1 at 1-2). He also states that he plans to return in 2022 to ensure that the hotel has achieved compliance with the ADA. (Docket No. 22-1 at 1-2). Like the plaintiffs' allegation in *Mielo*, Mortland avers that he is "*currently* 'deterred from returning to [the hotel's] facilities.'" *Mielo*, 897 F.3d at 480 n.15; (Docket No. 22-1 at 2 ("I would like to return but for Defendant's non-compliance."). Additionally, like the plaintiffs in *Mielo* whose allegation was "supported by record evidence illustrating that Plaintiffs have visited many Steak 'n Shake restaurant locations in the past," Mortland contends that he frequently visits the Pittsburgh International Race Complex from his home in Columbus, Ohio and would like to use the hotel given its close proximity to the raceway. *Mielo*, 897 F.3d at 480 n.15; (Docket Nos. 1 at ¶ 25; 22-1 at 1-2). Thus, Mortland suffers from "allegedly unlawful deterrence" like the plaintiffs in *Mielo*, "something that [he is] currently suffering." *Mielo*, 897 F.3d at 480 n.15. In sum, *Mielo* controls the disposition of this matter such that that the Court must conclude that Mortland has averred he has suffered an actual injury to which there is no contest, not one that is hypothetical or speculative. As such, Mortland has standing to bring his lawsuit.

**B. Default Judgment Analysis**

With standing addressed, the Court turns to whether "the unchallenged facts" put forward by Mortland "constitute a legitimate cause of action," the first step in the default judgment analysis. *Murphy*, 2019 WL 7708592, at *1 (internal quotation marks and citation omitted). Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12181(a). The law requires the Attorney General to issue regulations "to carry out the provisions" of 42 U.S.C. § 12181. *See* 42 U.S.C. § 12186(b). The mandate from 42 U.S.C. § 12181 ultimately produced the 1991 Standards and the 2010 Standards which apply to all hotels constructed after January 26, 1992. *Mullen v. Concord Hosp. Enters. Co.*, 2022 WL 295880, at *7 (W.D. Pa. Feb. 1, 2022). The 1991 and 2010 Standards "detail how places of public accommodation are 'to be designed, constructed, and altered in compliance with the accessibility standards' set out in the regulations." *Id.* at *4.[1] Thus,

---

[1]    To establish an ADA claim, Mortland must show he suffered "(1) discrimination on the basis of a disability; (2) in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation; (3) by the public accommodation's owner, lessor or operator." *See Anderson v. Macy's Inc.*, 943 F. Supp. 2d 531, 542-43 (W.D. Pa. 2013) (Hornak, J.); *Harty v. Nem Limited Partnership*, 554 F. Supp. 3d 715, 718-19 (E.D. Pa. 2021). Here, Mortland states that he is wheelchair bound, and therefore disabled. *Mullen v. Concord Hosp. Enters. Co.*, 2022 WL 295880, at *7 (W.D. Pa. Feb. 1, 2022); (Docket No. 1 at ¶ 5). Additionally, the hotel is a public accommodation, and Mortland avers that Castle Hospitality is the owner, lessor, and/or operator of the hotel. 42 U.S.C. § 12181(7)(A); (Docket No. 1 at ¶ 10). Mortland must also plausibly allege that the removal of the architectural barriers is "readily achievable," meaning removal of the barriers is "easily accomplishable and able to be carried out without much difficulty or expense." *Allen v. Ollie's Bargain Outlet, Inc.*, 37 F.4th 890, 893-94 (3d Cir. 2022) (internal quotation marks and citation omitted). At this posture of the case, the Court is satisfied that Mortland plausibly alleges the readily achievable nature of the needed alterations given that they involve actions such as resurfacing the parking lot, lifting portions of the sidewalk, re-arranging tables, moving shelves, etc. (Docket No. 1 at 5-10).

the question becomes whether Mortland has sufficiently alleged that the hotel has failed to comply with the 1991 and/or the 2010 standards.

At pages 5 through 10 of his complaint, Mortland makes 60 allegations with citations to the 1991 and 2010 Standards detailing how the hotel has failed to comply with same. (Docket No. 1 at 5-10). Due to the length of the allegations, the Court incorporates these pages of Mortland's complaint by reference. After close review of the allegations and the relevant standards, the Court finds that Mortland has stated a plausible claim for relief for all but two of the allegations as detailed below. To illustrate how Mortland has sufficiently stated a cause of action, the Court takes as an example allegation number 21 where Mortland states that "[i]n guest room 213, the towel bar is too high at 54" and is out of the maximum reach range for a side approach in violation of 2010 ADAS Section: 308.3.1." (Docket No. 1 at 7). Section 308.3.1 of the 2010 Standards provides: "Where a clear floor or ground space allows a parallel approach to an element and the side reach is unobstructed, the high side reach shall be 48 inches (1220 mm) maximum and the low side reach shall be 15 inches (380 mm) minimum above the finish floor or ground." 36 C.F.R. pt. 1191, app. D § 308.3.1. Thus, the standard requires a maximum reach of 48 inches above the floor, but Mortland contends that the towel bar in guest room 213 is 54 inches above the floor in violation of the standard.

The Court now addresses the two instances in which Mortland did not state a cause of action. For allegation 34, Mortland asserts that "[i]n guest room 213, there may not be enough accessible rooms designed with mobility features in violation of 2010 ADAS Section: 224.2 and 1991 ADAS Section: 9.1.2." (Docket No. 1 at 8). Section 224.2 of the 2010 Standards requires a certain percentage of the total number of guest rooms to have mobility features, including roll-in showers. 36 C.F.R. pt. 1191, app. B § 224.2. The 1991 Standards require something similar to the

2010 Standards. *See* 28 C.F.R. pt. 36, app. D § 9.1.2. The Court provides a screenshot of the standards below.

2010 Standard:

| Total number of guest rooms provided | Minimum number of required rooms without roll-in showers | Minimum number of required rooms with roll-in showers | Total number of required rooms |
|---|---|---|---|
| Table 224.2—Guest Rooms With Mobility Features | | | |
| 1 to 25 | 1 | 0 | 1. |
| 26 to 50 | 2 | 0 | 2. |
| 51 to 75 | 3 | 1 | 4. |
| 76 to 100 | 4 | 1 | 5. |
| 101 to 150 | 5 | 2 | 7. |
| 151 to 200 | 6 | 2 | 8. |
| 201 to 300 | 7 | 3 | 10. |
| 301 to 400 | 8 | 4 | 12. |
| 401 to 500 | 9 | 4 | 13. |
| 501 to 1000 | 2 percent of total | 1 percent of total | 3 percent of total. |
| 1001 and over | 20, plus 1 for each 100, or fraction thereof, over 1000 | 10, plus 1 for each 100, or fraction thereof, over 1000 | 30, plus 2 for each 100, or fraction thereof, over 1000. |

1991 Standard:

| Number of Rooms | Accessible Rooms | Rooms with Roll-in Showers |
|---|---|---|
| 1 to 25 | 1 | |
| 26 to 50 | 2 | |
| 51 to 75 | 3 | 1 |
| 76 to 100 | 4 | 1 |
| 101 to 150 | 5 | 2 |
| 151 to 200 | 6 | 2 |
| 201 to 300 | 7 | 3 |
| 301 to 400 | 8 | 4 |
| 401 to 500 | 9 | 4, plus one for each additional 100 over 400 |
| 501 to 1000 | 2% of total | |
| 1001 and over | 20 plus 1 for each 100 over 1000 | |

and suites that comply with 9.3 (Visual Alarms, Notification Devices, and Telephones) shall be provided in conformance with the following table:

| Number of Elements | Accessible Elements |
|---|---|
| 1 to 25 | 1 |
| 26 to 50 | 2 |
| 51 to 75 | 3 |
| 76 to 100 | 4 |
| 101 to 150 | 5 |
| 151 to 200 | 6 |
| 201 to 300 | 7 |
| 301 to 400 | 8 |
| 401 to 500 | 9 |
| 501 to 1000 | 2% of total |
| 1001 and over | 20 plus 1 for each 100 over 1000 |

**9.1.3 Sleeping Accommodations for Per-**

Mortland alleges that the hotel "may" not have enough accessible rooms to comply with either standard, but he does not provide the total number of guest rooms at the hotel or how many rooms should or should not have roll-in showers. (Docket No. 1 at 8). Thus, the Court will not speculate about the number of and type of rooms in the hotel and finds that Mortland has not stated a claim for relief at allegation number 34. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.").

In a similar vein, at allegation 35, Mortland avers that "[i]n guest room 213, accessible guest rooms may not be dispersed among the various classes of sleeping accommodations in violation of 2010 ADAS Section: 224.5 and 1991 ADAS Section: 9.1.4." (Docket No. 1 at 8). Section 224.5 of the 2010 Standard requires that guest rooms with mobility features "shall be dispersed among the various classes of guest rooms, and shall provide choices of types of guest rooms, number of beds, and other amenities comparable to the choices provided to other guests." 36 C.F.R. pt. 1191, app. B § 224.5. Section 9.1.4 of the 1991 Standard requires a similar dispersion requirement. *See* 28 C.F.R. pt. 36, app. D § 9.1.4. Again, Mortland maintains that the hotel "may" not follow the dispersion rules from the standards, but provides no factual detail to support the allegation. (Docket No. 1 at 8). Thus, Mortland has not stated a plausible claim for relief at allegation 35.

Having determined that Mortland has stated a claim upon which relief can be granted for most of his allegations, the Court next considers whether the hotel has any "litigable defenses," that would prevent entry of a default judgment against it. *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). The Court notes that Mortland served the hotel, and the Court has subject matter jurisdiction over this federal cause of action. (Docket No. 18). Likewise, given that the hotel and its architectural barriers that prevent full and equal access to disabled persons exists in the

Western District of Pennsylvania, the Court has personal jurisdiction over the hotel and venue is also proper in this Court. 28 U.S.C. § 1391(b)(2); *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017). After careful consideration, it does not appear that the hotel has any litigable defenses that would prevent the entry of default judgment against it. *See e.g.*, *Murphy*, 2019 WL7708592, at *3 (declaring that the defendant "appears to have been properly served, subject matter jurisdiction is present, and venue is appropriate" and concluding that no litigable defenses exist).

As a penultimate step, the Court considers whether Mortland would suffer prejudice if the Court did not enter a default judgment against the hotel. *Chamberlain*, 210 F.3d at 164. "A plaintiff will be prejudiced absent a default judgment where, due to the defendant's continued failure to respond to plaintiff's claims, the plaintiff is left with no other recourse." *Cyprus Mines Corp. v. M & R Indus., Inc.*, 2015 WL 1469529, *8 (D.N.J. Mar. 30, 2015). The hotel has refused to answer Mortland's complaint or otherwise participate in this action despite service on it, and the Court observes that Mortland has no other recourse to make the hotel remove its architectural barriers. Accordingly, the Court finds that Mortland would suffer prejudice if the Court did not enter default judgment against the hotel. *See, e.g.*, *Murphy*, 2019 WL7708592, at *3. As final step in the default judgment analysis, the Court must consider whether the hotel's "delay is due to culpable conduct." *Chamberlain*, 210 F.3d at 164. Mortland properly served the hotel on January 12, 2022. (Docket No. 18). Since then, the hotel has refused to participate in the case, despite receiving notice of Mortland's motion for default judgment. (Docket No. 25). Accordingly, the Court finds that the hotel's delay is due to culpable conduct. As such, the default judgment analysis conducted by the Court shows that Mortland is entitled to a default judgment, and thus the Court will grant Mortland's motion for a default judgment.

**C. Relief Requested**

With Mortland entitled to a default judgment, the Court next considers the appropriate relief. Federal Rule of Civil Procedure 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Relief is also limited to what the statute provides. *See, e.g.*, *Murphy*, 2019 WL7708592, at *1, *4. Thus, the Court must examine the relief Mortland requested in his motion for default judgment to ensure that it is allowed by statute and requested in his complaint.

In his motion for default judgment, Mortland seeks an injunction "prohibiting [the hotel] from discrimination against Plaintiff or disabled individuals at its place of public accommodation." (Docket No. 22 at 15). He also asks the Court to order the following:

> Immediate closure of Defendant'[s] . . . place of business until completion of all remedial alterations necessary to make the premises accessible by individuals with disabilities and otherwise comply with the ADA. In the alternative, the Court should order the Defendant to make all remediations which affect one with a mobility disability, whether identified in Plaintiff's Complaint or not, within a short time period if it decides against closure of the business. (Docket No. 22 at 15).

Lastly, Mortland requests $7,857.62 in attorney's fees, costs, and expert witness fees. (Docket No. 22 at 15).

In his complaint, Mortland first asks for an injunction "compelling Defendant to make the business readily accessible to and usable by individuals with disabilities; and to make reasonable modifications in policies, practice, eligibility criteria and procedures so as to afford full access to the goods, services, facilities, privileges, advantages and accommodations being offered." (Docket No. 1 at 17). He also asks for "attorney's fees, litigation expenses and costs of suit." (Docket no. 1 at 17).

Under Title III of the ADA, a court may award "injunctive relief," which "shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with

14

disabilities to the extent required by this subchapter." 42 U.S.C. § 12188(a)(2). Further, a court may award "a reasonable attorney's fee, including litigation expenses, and costs" to prevailing parties. 42 U.S.C. § 12205. A party that has secured a default judgment is a prevailing party. *See, e.g.*, *Carbisiero v. Sw. Hotel Mgmt.*, 2021 WL 1894604, at *3 (W.D. Pa. Apr. 20, 2021) (Dodge, J.).

### 1. Injunctive Relief

Initially, the Court notes that Mortland did not request in his complaint that the Court order the closure of the hotel until it complies with the ADA, so that portion of his requested relief is denied. *Mortland v. Lights Out Dev., LLC*, 2020 WL 3577867, at *3 n.1 (S.D. Ind. July 1, 2020) ("To the extent that Mr. Mortland asks that his injunctive relief include a requirement that the Hotel be closed until it complies with the ADA, his request must be rejected because such relief is not provided for in the statute and because he did not ask for it in his Complaint."). Otherwise, the statute permits the Court to issue an injunction "to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this subchapter" and Mortland requested such an injunction in his complaint. 42 U.S.C. § 12188(a)(2); (Docket No. 1 at 17).

When deciding whether to grant injunctive relief, a plaintiff "must show that (1) [she] has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardships tips in [her] favor; and (4) granting an injunction would not be against the public interest."[2] *Ne. Pa. Freethought Soc'y v. Cnty. of Lackawanna Transit Sys.*, 938 F.3d 424, 442 (3d Cir. 2019).

---

[2]    Some courts outside the Third Circuit have held that "[t]he standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief." *Antoninetti v. Chipotle Mex. Grill, Inc.*, 643 F.3d 1165, 1175 (9th Cir. 2010); *Martinez v. TD Bank USA, N.A.*, 225 F. Supp 3d 261, 272-73 (D.N.J. Dec. 21, 2016). For the sake of completeness, the Court has undertaken the standard four-factor analysis to determine whether Mortland is entitled to injunctive relief.

Further, "[t]he first two elements typically constitute two sides of the same inquiry, for the availability of adequate monetary damages belies a claim of irreparable injury." *Id.* (internal quotation marks and citation omitted). Here, the first two elements are met because Mortland cannot obtain money damages for violations of Title III, meaning that there is no adequate remedy at law and he would suffer an irreparable injury but for the prospective relief of an injunction. *See, e.g.*, *Murphy v. Hundreds Is Huge, Inc.*, 2022 WL 2110202, at *11 (June 10, 2022) (Lanzillo, J.) ("Individual awards of money damages are not available in an action pursuant to Title III of the ADA.").

Additionally, it is the Court's view that the balance of hardships favors Mortland. On the one hand, Mortland cannot walk, and the hotel has prevented him from enjoying equal access to its facilities in violation of the ADA. This hardship was great enough for Congress to enact Title III of the ADA and shows the depth of harm suffered by people with disabilities at public accommodations. Section 12101 of the ADA states:

> Congress finds that . . . individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers [and] . . . the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals [and] . . . the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity. 42 U.S.C. § 12101.

Regarding hardships for the hotel, it has not participated in this lawsuit, so the Court lacks complete information as to the cost of correcting the hotel's ADA violations. That said, Mortland submitted an expert report with numerous pictures and illustrations that provide the Court with a

sufficient idea of what it would take for the hotel to comply with the ADA. (Docket No. 22-4).[3] As shown in the report, the violations appear to require an interior renovation of a limited number of areas in the hotel which include some guest rooms, the eating area, the lobby, the parking lot, and the pool area that would consist of projects such as moving shelves to the applicable height or resurfacing portions of the parking lot or sidewalk. (*See* Docket No. 22-4). As the Court sees it, the hotel would not need to undertake a complete demolition or remodeling of the facility. What is more, the Court will provide the hotel with 120 days to correct its violations, a time period given to other hotels when faced with similar lawsuits. *Mortland v. Lights Out Dev., LLC*, No. 19-cv-2557, ECF No. 14 at 3 (S.D. Ind. July 1, 2020) (issuing a permanent injunction requiring a defaulting defendant to comply with the ADA in accordance with plaintiff's complaint within 120 days). Based on the information presented in the record, the balance of hardships favors Mortland.

Finally, the Court holds that correcting the hotel's discriminatory behavior by issuing a permanent injunction is within the public interest. *See, e.g.*, *Berthiaume v. Doremus*, 998 F. Supp. 2d 465, 476 (W.D. Va. 2014) (finding that issuing a permanent injunction against a defaulting party who violated Title III of the ADA was in the public interest); *cf. Ne. Pa. Freethought Soc'y*, 938 F.3d at 442 (holding that injunctive relief to correct a violation of federal law served the public interest). As such, the Court will issue a permanent injunction requiring the hotel to correct the violations of the ADA within 120 days as stated by Mortland in allegations 1-33 and 36-60 of his complaint.

## 2. Expert Witness Fees

---

[3]     The Court further discusses Mortland's qualifications as an expert and his fee for preparing the report at Section C.2, *infra*.

Turning to the expert witness fees, the Court notes that a court may award "litigation expenses," 42 U.S.C. § 12205, stemming from an ADA suit, and that the term "litigation expenses" includes expert witness fees. *See Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002) (holding that the term "litigation expenses" encompassed expert witness fees).

Mortland is serving as an expert witness in his own case. As demonstrated by his curriculum vitae and in the case reports, Mortland is qualified as an expert witness and has served as same numerous times. (Docket No. 22-5); *Neal v. Second Sole of Youngstown, Inc.*, 2018 WL1740140, at *4 (N.D. Ohio Apr. 11, 2018) (finding that "Mortland obviously has experience that would allow him to assess a facility's accessibility" and that his "measurement methods were reliable"). The Court further notes that nothing in Federal Rule of Evidence 702 or elsewhere appears to prohibit parties from serving as their own expert witnesses if they otherwise qualify. *See, e.g.*, Fed. R. Evid. 702; *Tagatz v. Marquette Univ.*, 861 F.2D 1040, 1042 (7th Cir. 1988) (observing that nothing in the language of Federal Rule of Evidence 702 "suggests that a party cannot qualify as an expert" in his own case); *Mathison v. Wilson*, 2017 WL 4227243, at *3 (D. Colo. Mar. 21, 2017) (declaring that "[t]he fact that an expert witness is also a party does not preclude qualification as an expert" and collecting cases).

If a party can qualify as an expert in his own case, it follows that he can seek reimbursement of an expert witness fee for work completed in his own case. While the Court has found little precedent regarding the reimbursement of a plaintiff-expert witness for work performed in his own case, a party recently unsuccessfully challenged Mortland's ability to serve as his own expert witness and seek an expert witness fee. *Mortland v. Local Cantina Dublin, LLC*, 2021 WL 3033355, at *1 n.2 (S.D. Ohio July 19, 2021) (rejecting the argument that Mortland's role as both a party and as his own expert witness creates a "conflict of interest" and noting that the defendant

cited no legal authority prohibiting plaintiffs from serving as their own expert witnesses and receiving expert witness fees). As such, and given that Mortland's fee of $1,720 for his investigation of the hotel and preparation of an expert witness report appears reasonable, the Court will award Mortland $1,720 in expert witness fees. (Docket No. 22-6).

### 3. Attorney Fees

Moving on to the attorney-fee request, Mortland seeks $5,649.62 in attorney's fees for his counsel, Colin Meeker. (Docket No. 22-3). Courts assess requests for attorney's fees using the lodestar method. *In re: S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP*, 927 F.3d 763, 773 (3d Cir. 2019). Under the lodestar method, a court determines the reasonable fee "by multiplying the number of hours . . . reasonably worked on a client's case by a reasonable hourly billing rate for such services given the geographical area, the nature of the services provided, and the experience of the lawyer." *Id.* An attorney's reasonable hourly rate is "the prevailing rate[] in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Clemens v. New York Cen. Mut. Fire Ins. Co.*, 903 F.3d 396, 402 (3d Cir. 2018).

Here, Meeker devoted 17.38 hours to this case, and he requests an hourly rate of $325. (Docket No. 22-3 at 5). Initially, the Court notes that Meeker sought an hourly rate of $325 in an ADA case from the Northern District of Ohio in 2021. *Mortland v. Riley Hotel Grp. LLC*, CA No. 20-428, ECF No. 38-2 (N.D. Ohio Apr. 13, 2021). Judge Benita Pearson found that Meeker's rate "falls well within an acceptable fee range for this case, considering its type and complexity." *Mortland v. Riley Hotel Grp. LLC*, CA No. 20-428, ECF No. 41 at 2 (N.D. Ohio July 4, 2021).[4]

---

[4]     An attorney's hourly "is normally addressed by submitting affidavits of other attorneys in the relevant legal community attesting to the range of prevailing rates charged by attorneys with similar skill and experience." *See, e.g.*, *Bd. of Tr. of Greater Pa. Carpenter's Med. Plan v. Schwartzmiller*, 2021 WL 679988, at *15 (W.D. Pa. Feb. 22, 2021) (Fischer, J.). That said, courts have relied on other probative evidence of an attorney's hourly rate aside from affidavits. *See*

According to his pro hac vice motion, Meeker was admitted to the Ohio bar on June 22, 2015, meaning he has been practicing law for slightly more than 7 years. (Docket No. 3-1 at). A rate of $325 per hour falls within the range of an attorney with 7 years' experience litigating ADA cases in the Western District of Pennsylvania, and the Court will accept this rate. *Turco v. Zambelli Fireworks Mfg. Co.*, 2022 WL 395245, at *3 (W.D. Pa. Feb. 9, 2022) (Wiegand, J.) (assigning a rate of $295 to Rachel McElroy, an attorney with approximately 7 years of experience, after she helped secure a jury verdict in an ADA case).

When it comes to examining whether the number of hours expended by an attorney is reasonable, a "court may not reduce an award *sua sponte*; rather, it can only do so in response to specific objections made by the opposing party." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 711 (3d Cir. 2005). In the default judgment context, courts have held that the lack of objection by a party means that the court cannot reduce the number of hours expended as unreasonable. *See, e.g.*, *Arku-Nyadia v. Legal Sea Foods, LLC*, 2022 WL 958465, at *8 (D.N.J. Mar. 29, 2022) ("The Court is mindful in determining the reasonableness of the time spent by counsel that the defaulted defendant did not oppose this motion and that the Court thus may not 'reduce counsel fees *sua sponte* as excessive, redundant, or otherwise unnecessary in the absence of a sufficiently specific objection.'" (citation omitted)). In any event, it is the Court's view that the 17.38 hours expended by Meeker to prepare a lengthy and complex ADA complaint and then seek a motion for default judgment is reasonable. In sum, the Court finds that, under the lodestar method, Meeker's rate and hours for this case are reasonable, and the Court will award Mortland $5,649.62 in attorney's fees. Additionally, Mortland seeks $488 for costs of bringing suit. (Docket

---

*Napold v. Parvatishver, LLC*, 2018 WL 1089680, at *7 (W.D. Pa. Feb. 28, 2018) (Fischer, J.) (finding that an hourly rate was reasonable by examining the attorney-fee awards in other cases in the Western District of Pennsylvania); *Carbisiero*, 2021 WL 1894604, at *3 (same).

No. 22-3 at 5). The Court concludes that this amount is reasonable as well and will award Mortland these costs.

### VI. CONCLUSION

Based on the foregoing, Mortland's Motion for Default Judgment [21] is GRANTED. Mortland shall serve a copy of this opinion along with the accompanying order on Castle Hospitality by September 1, 2022 and file proof of same seven days after service. An appropriate order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Date:   August 22nd, 2022

cc/ecf:  All counsel of record.